# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JERRY POYNTZ,

        Petitioner,                      Case Number: 2:15-13536
                                                              HONORABLE SEAN F. COX

v.

SHERMAN CAMPBELL,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Jerry Poyntz seeks habeas corpus relief under 28 U.S.C. § 2254. Petitioner is a state prisoner in the custody of the Michigan Department of Corrections pursuant to a conviction for armed robbery. He raises seven claims for habeas relief. Respondent argues that the claims are procedurally defaulted and/or meritless. The Court denies the petition.

## I. Background

Petitioner's convictions arise from the robbery of David Skinner in Detroit on May 18, 2011. Skinner testified that he placed an advertisement on Craigslist offering a diamond ring for sale. On May 17, 2011, he received a telephone call from someone expressing interest in purchasing the ring. The caller ID indicated that the caller's name was John West. Skinner arranged to meet this individual at a home on Clements Street in Detroit the following day. Skinner testified that he went to a side door of the home as directed and was attacked by two men with guns. One of the men grabbed Skinner's briefcase and pistol-

whipped him, the other hit him in the head with bottle. The men took Skinner's briefcase and wallet and fled. Police were called. Although he was bleeding from cuts to his head, Skinner declined to be transported to the hospital because he lacked health insurance. Skinner later viewed a photo lineup and identified Petitioner as one of the assailants.

David Kokenos testified as a Rule 404(b) witness. He testified that, on May 4, 2011, he received several phone calls regarding an advertisement for cell phones he had placed on Craigslist. The phone calls came from the same number as that used to call Skinner. Kokenos arranged to meet the potential buyer at a grocery store. When he approached the front entrance of the store, two men approached him and asked to see the phones. One of the men took a phone and fled without paying for it. Kokenos chased the man, but was unable to catch him. Kokenos reported the theft to the police, and provided them with the caller ID information from his telephone. Kokenos later viewed a photographic lineup and identified Petitioner as the individual who ran away with his phone.

Following a bench trial in Wayne County Circuit court, Petitioner was convicted of armed robbery. On December 15, 2011, he was sentenced to fifteen to thirty years' imprisonment. Petitioner filed an appeal of right in the Michigan Court of Appeals, raising these claims through counsel: (i) insufficient evidence supported conviction; and (ii) offense variables 8 and 10 were incorrectly scored. He raised these additional claims in a *pro per* supplemental brief: (iii) ineffective assistance of counsel; and (iv) impermissibly suggestive pretrial identification procedure. The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Poyntz*, No. 308166, 2013 WL 1165136 (Mich. Ct. App.

2

March 21, 2013).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals and a claim that appellate counsel was ineffective for failing to raise the claims raised in Petitioner's *pro per* supplemental brief. The Michigan Supreme Court denied leave to appeal. *People v. Poyntz*, 835 N.W.2d 587 (Mich. 2013).

Petitioner then filed a motion for relief from judgment in the trial court. He raised claims concerning the sufficiency of the evidence, counsel's performance, the pretrial identification procedures, police misconduct, and actual innocence. The trial court denied the motion. *People v. Poyntz,* No. 11-006867-01-FC (Wayne County Cir. Ct. March 10, 2014) (ECF No. 10-8). The Michigan Court of Appeals and Michigan Supreme Court each denied Petitioner leave to appeal the trial court's decision. *People v. Poyntz*, No. 321142 (Mich. Ct. App. June 16, 2014) (ECF No. 10-11); *People v. Poyntz*, 860 N.W.2d 627 (Mich. 2015).

Petitioner then filed the pending habeas petition. He raises these claims:[1]

I. Petitioner's conviction should be reversed because the evidence presented in the bench trial failed to prove his guilt beyond a reasonable doubt.

---

[1] Respondent argues that the petition raises only the four claims raised on direct review in state court. Respondent is correct that Petitioner lists only four claims for relief on the form habeas corpus petition. But he also indicates "see attached briefs" and attaches the briefs filed both on direct and collateral review. "'[A]llegations of a *pro se* habeas petition ... are entitled to a liberal construction.'" *Porter v. Genovese*, __ F. App'x __, 2017 WL 167469, *11 (6th Cir. 2017), quoting *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985). Construing the petition liberally, the Court finds that Petitioner raises the claims raised on direct and collateral review in state court.

3

II. The trial court made scoring errors in OV 8 and 10. Because correction of either of these offense variables would change the sentence guideline range, Petitioner must be resentenced.

III. Petitioner was denied his constitutional right to effective assistance of counsel when counsel was appointed just prior to the preliminary examination, when counsel failed to challenge an improper and tainted identification, investigate the charge/case, failed to call and/or interview alibi witnesses and was absent at a critical stage of the preliminary examination.

IV. Petitioner was denied his constitutional right to a fair and impartial trial by the admission of an unduly suggestive and improper identification and counsel's failure to object is unreasonable.

V. Petitioner contends that appellate counsel was ineffective for failing to raise the issue of ineffective assistance of trial counsel.

VI. Petitioner argues that there was police/prosecutorial misconduct because Detective Brown withheld the fact that he spoke with alibi witness Racquel Hamilton during the interrogation and she informed him that Petitioner was with him on the day and time of the incident.

VII. Petitioner argues that he is in fact innocent.

## II. Standard

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 408. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the

state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)) (Stevens, J., concurring)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103, 131 S. Ct. at 786–87.

Additionally, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. Discussion

## A. Motion for Evidentiary Hearing

Petitioner seeks an evidentiary hearing to develop evidence related to his ineffective assistance of counsel claims.

Federal habeas review under 28 U.S.C. §2254(d) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "[R]eview under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 182. The Court reasoned that "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court." *Id.* at 182-83. "[D]istrict courts are precluded from conducting evidentiary hearings to supplement existing state court records when a state court has issued a decision on the merits with respect to the claim at issue." *Ballinger v. Prelesnik*, 709 F.3d 558, 561 (6th Cir. 2013). Petitioner's ineffective assistance of counsel claims were decided on the merits by the state court. Therefore, the Court must decide these claim based upon the existing record. The motion will be denied.

## B. Claim One: Sufficiency of the Evidence

Petitioner claims that he is entitled to habeas corpus relief because the prosecution presented insufficient evidence to sustain his conviction for armed robbery on the ground that prosecution did not establish his identity as the robber. The Michigan Court of Appeals rejected this claim:

> It is undisputed that an armed robbery occurred; at issue is whether defendant was one of the perpetrators. After reviewing the record as a whole, it is apparent that there was more than sufficient evidence for a rational trier of fact

7

to conclude that defendant was one of the perpetrators who committed the armed robbery. *Davis*, 241 Mich. App at 700. A few weeks after the robbery occurred, the complainant picked defendant out of a photographic line-up without hesitation. At trial, the complainant also confidently identified defendant as the perpetrator. The complainant testified that during the robbery he was inches away from defendant and that he could clearly see defendant's face. The trier of fact also reviewed and compared the physical description the complainant gave of the perpetrator to an officer investigating the robbery with that of defendant's actual physical characteristics and found the description to be "pretty consistent" with defendant's appearance. Defendant, however, argues that there was insufficient identification evidence because there were "several critical inconsistencies" in the complainant's testimony that undermined his identification of defendant as the perpetrator. Indeed, there were a few inconsistencies between the statements the complainant provided to the responding officers and the statements the complainant provided to the police a few weeks after the robbery. Specifically, the complainant provided differing details regarding the commencement of the robbery and the weapons used during the armed robbery. In spite of these inconsistencies, however, the trier of fact was free to conclude that the complainant's identification of defendant was credible. *People v. Fletcher*, 260 Mich. App 531, 561-562; 679 N.W.2d 127 (2004). The trier of fact reviewed these inconsistencies within the context of the evidence presented and found the complainant's testimony and identification to be both "sincere" and "accurate." "This Court will not interfere with the [trier of fact's] role of determining the weight of the evidence or deciding the credibility of the witnesses," *id.* at 561, and the credibility of identification evidence is a matter specifically for the trier of fact to decide, *Davis*, 241 Mich.App at 700. Considering this identification evidence coupled with the admitted MRE 404(b) evidence identifying defendant as the perpetrator in a similar Craigslist robbery, the prosecution provided sufficient evidence for a rational trier of fact to find that defendant committed armed robbery.

*Poyntz*, 2013 WL 1165136 at *1.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge focuses on whether "after viewing the evidence in the light most

8

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). In the habeas context, a sufficiency of the evidence claim "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). For a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, —, 132 S.Ct. 2060, 2065 (2012).

In considering a sufficiency of the evidence claim on habeas review, this Court must not "'reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury.'" *Nali v. Phillips*, 681 F.3d 837, 842 (6th Cir. 2012) (quoting *Johnson v. Mitchell*, 585 F.3d 923, 931 (6th Cir. 2009)). The Court presumes the correctness of the facts relied upon by the Michigan Court of Appeals; Petitioner has not rebutted that presumption. The evidence establishing Petitioner's identity as one of the robbers was more than sufficient to sustain the conviction. Habeas relief is denied on this claim.

### C. Claim Two: Scoring of Offense Variables

Petitioner's second claim for habeas corpus relief concerns the scoring of offense variables 8 and 10. Respondent contends that this claim is not cognizable on habeas review

9

and/or lacks merit.

It is well-established that "'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (*quoting Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Petitioner's argument that the state court erred in scoring his sentencing guidelines is based solely on the state court's interpretation of state law. It does not implicate any federal rights. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review."); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("[S]tate courts are the ultimate expositors of state law."). Therefore, habeas corpus relief is not available for this claim.

### D. Claim Three: Ineffective Assistance of Counsel

Petitioner raises several ineffective assistance of trial counsel claims. He argues that counsel was ineffective in failing to investigate and call witnesses and failing to object to the identification testimony. He also argues that his defense counsel was ineffective for allowing a "stand-in" attorney to represent him at the preliminary examination and at sentencing. The Court finds that the Michigan Court of Appeals' adjudication of these claims was not contrary to or an unreasonable application of Supreme Court precedent.

The AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, — U.S. —, 134 S. Ct. 10, 16 (2013). The standard for obtaining relief is "'difficult to meet.'" *White v. Woodall*, — U.S. —, 134 S. Ct. 1697, 1702 (2014) (*quoting Metrish v. Lancaster*, 569 U.S. —, —, 133 S. Ct.

1781, 1786 (2013)). In the context of an ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668 (1984), the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687. To establish deficient representation, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. In order to establish prejudice, a petitioner must show that, but for the constitutionally deficient representation, there is a "reasonable probability" that the outcome of the proceeding would have been different. *Id.* at 694.

Petitioner's first ineffective assistance of counsel claim concerns defense counsel's failure to investigate and call certain witnesses. Petitioner argues that defense counsel should have called his fiancee, father, and the attorney who represented him during a pretrial photographic lineup. The Michigan Court of Appeals held that defense counsel's decision not to call Petitioner's fiancee as a witness was the result of reasonable trial strategy where the record showed that defense counsel opted not to call her because she suffered from credibility issues. *Poyntz*, 2013 WL 1165136 at *5. The state court also held that Petitioner

11

was not prejudiced by counsel's failure to call his father as a witness. Petitioner argues that his father would have testified that the cell phone number used to call the victim in this case was previously assigned to him, but that he had relinquished the number sometime in 2010, and, therefore, neither Petitioner nor his father called the victim from that phone number. The state court found no reasonable likelihood that the result of the proceeding would have been different had this evidence been presented based upon the identification of Petitioner by Skinner and the Rule 404(b) victim, Kokenos.

The record shows that Skinner and Kokenos each were called from the same cell phone number and that each separately picked Petitioner out of a photo lineup as the perpetrator. Based upon this evidence and counsel's indication that he did not think Petitioner's fiancee or father would be credible witnesses, the Court finds the state court's decision was not contrary to or an unreasonable application of *Strickland*. Habeas relief is denied on this claim.

Petitioner also argues that counsel was ineffective in failing to call as a witness the attorney who was present during the photographic lineup. Petitioner makes no offer of proof showing that the attorney's testimony would have been relevant or beneficial. His conclusory allegation that the attorney's testimony would have been favorable is insufficient to establish a *Strickland* violation.

Next, Petitioner argues that defense counsel failed to adequately challenge the identifications of him by Skinner and Kokenos through cross-examination and also failed to object to the pretrial identification procedures. The Michigan Court of Appeals found no

deficiency in defense counsel's cross-examination of these witnesses. *Poyntz*, 2013 WL 1165136 at *4. The state court found that defense counsel adequately questioned these witnesses about inconsistencies in their identifications. Further, the state court found that the pretrial identification procedure was not unduly suggestive and that counsel, therefore, was not ineffective in failing to object on this basis. *Id.* The Michigan Court of Appeals' decision is not an unreasonable determination of the facts or an unreasonable application of *Strickland*. The record shows that defense counsel vigorously cross-examined Skinner and Kokenos and highlighted inconsistencies in their descriptions of the offender and their identifications. Habeas relief is not appropriate on this claim.

Finally, Petitioner argues that counsel was ineffective in allowing a stand-in attorney to represent him at the preliminary emanation and at sentencing. The Michigan Court of Appeals found no error resulting from defense counsel's absence because substitute counsel was present at the preliminary examination and at sentencing and substitute counsel's performance was not deficient. *Poyntz*, 2013 WL 1165136 at *6. Other than conclusory allegations, Petitioner presents no evidence to support a claim that substitute counsel performed deficiently. Petitioner fails to identity any actions counsel should have taken or arguments she should have advanced during the preliminary examination. The record shows that substitute counsel was familiar with the case and, at sentencing, successfully argued for the reduction of the scoring of prior record variable two. She also disputed the scoring of several offense variables, demonstrating a familiarity with the case in doing so. Petitioner has failed to show that the state court's decision denying this claim was contrary to or an

unreasonable application of *Strickland*.

### E. Claim Four: Pretrial Identification Procedure

Petitioner next argues that the pretrial identification procedure was impermissibly suggestive and that no independent basis existed for the in-court identification. Respondent argues that this claim is procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of this claim.

Due process requires suppression of eyewitness identification evidence "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 565 U.S. 228, 238 (2012). A pretrial identification violates due process where: (1) the identification procedure is impermissibly suggestive; and (2) the suggestive procedure gives rise to a very substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972); *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977) (due process challenges to identification procedures are reviewed using *Biggers'* test). But the Supreme Court has held that suppression of the tainted identification is not necessarily the inevitable consequence. *Brathwaite,* 432 U.S. at 112-113. Instead, the Court

has held that determining whether to suppress the identification should be done on a case-by-case basis. *Id.* at 116; *see also Biggers*, 409 U.S. at 201.

The danger is that an initial improper identification procedure will result in misidentification and will unduly influence later investigation. *U.S. v. Wade*, 388 U.S. 218, 229 (1967). "[T]he dangers for the suspect are particularly grave when the witness' opportunity for observation was insubstantial, and thus his susceptibility to suggestion is the greatest." *Id.* Therefore, "reliability is the linchpin in determining the admissibility of identification testimony. *Brathwaite*, 432 U.S. at 114. A court must undertake a two-step analysis to determine the validity of a pretrial identification. First, the court must determine whether the procedure was unduly suggestive. If the court finds that the procedure was unduly suggestive, the court must then "evaluate the totality of the circumstances to determine whether the identification was nevertheless reliable." *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994).

The Michigan Court of Appeals (the last state court to issue a reasoned opinion regarding this claim) held that the identification procedure was not impermissibly suggestive stating, in relevant part:

> The record is void of evidence to substantiate any of defendant's claims or allegations concerning the procedures employed. When the trial court admitted the photographic line-up and later when the trial court discussed this evidence, the trial court did not mention nor did defense counsel draw attention to any perceived issues with the photographic line-up that would have indicated that it was unduly suggestive. Further, there was no evidence suggesting the police assisted or encouraged the complainant to select defendant from the photographic lineup. Additionally, defendant alleges that counsel was not present during the photographic line-up, but also contradicts

15

> himself and states that counsel was present. By and large, defendant simply makes conclusory statements regarding the suggestiveness of the photographs. Thus, defendant has failed to meet his burden in establishing that the procedure used was impermissibly suggestive. ... Accordingly, no error occurred when the complainant's in-court identification was admitted at trial.

*Poyntz*, 2013 WL 1165136 at *7.

The Court concludes that the state court's determination that the identification procedure was not impermissibly suggestive was not contrary to or an unreasonable application of Supreme Court precedent. Even assuming that the identification procedure was impermissibly suggestive, Petitioner has failed to show the identification was not reliable. Skinner testified that Petitioner's face came within inches of his own and that when he was shown the photo line up he knew immediately that Petitioner was the perpetrator. There is no evidence that Skinner's observations of the perpetrator were impeded by poor lighting or anything obscuring the perpetrator's face. Ultimately, the reliability of the in-court identification was for the trier of fact to decide. *Perry*, 132 S. Ct. at 729-30. Habeas relief is denied on this claim.

### F. Claim Five: Ineffective Assistance of Appellate Counsel

Petitioner's fifth claim for habeas corpus relief concerns the representation of appellate counsel on Petitioner's appeal of right in the Michigan Court of Appeals. He argues counsel was ineffective in failing to raise the claims raised in Petitioner's pro per supplemental brief on direct appeal and in his motion for relief from judgment.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59

(6th Cir. 1990). The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). The Court further stated:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. "[T]here can be no constitutional deficiency in appellate counsel's failure to raise meritless issues." *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999). None of the claims Petitioner argues his appellate attorney should have raised on appeal have been shown to have any merit. Therefore, counsel was not ineffective in failing to raise them.

### G. Claim Six: Police/Prosecutorial Misconduct

Petitioner next argues that the prosecutor violated *Brady v. Maryland,* 373 U.S. 83 (1963). Petitioner maintains that the prosecution withheld evidence that Petitioner's fiancee, Racquel Hamilton, informed police detective Roland Brown that Petitioner was with her on the date and time of the robbery. He argues that had this testimony been presented at trial, it would have created a reasonable doubt as to his guilt.

To demonstrate a *Brady* violation, (1) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) "that evidence must have been suppressed by the State, either willfully or inadvertently;" and (3) "prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). "There is no *Brady* violation where a defendant knew or should have known the essential facts permitting him

17

to take advantage of any exculpatory information, or where the evidence is available . . . from another source, because in such cases there is really nothing for the government to disclose." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) (internal quotation marks omitted). A defendant does not have to show that "disclosure of the evidence would have ultimately led to an acquittal;" he must, instead "establish that in the absence of the evidence he did not receive a fair trial, 'understood as a trial resulting in a verdict worthy of confidence.'" *Gumm v. Mitchell*, 775 F.3d 345, 363 (6th Cir. 2014), (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

The trial court denied this claim because the information allegedly withheld was known to Petitioner and he had himself conveyed this information to Detective Brown. 3/10/14 Order at 3-4, ECF No. 10-8, Pg. ID 592-93. *Brady* does not require the prosecution to produce materials not within the prosecution's exclusive control. *Coe,* 61 F.3d at 344 (no *Brady* violation when a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information). Here, the information cited by Petitioner as improperly withheld was known to him. The *Brady* disclosure doctrine, therefore, is not implicated.

### H. Claim Seven: Actual Innocence

Petitioner's final claim for habeas relief – that he is actually innocent – fails to state a claim upon which relief may be granted. Claims of actual innocence "have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390,

400 (1993). "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id*. In *House v. Bell*, the Supreme Court declined to answer the question left open in *Herrera* – whether a habeas petitioner may bring a freestanding claim of actual innocence. *See House v. Bell*, 547 U.S. 518, 555 (2006) (noting that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional and warrant federal habeas relief if there were no state avenue open to process such a claim").

Citing *Herrera* and *House*, the Sixth Circuit has ruled that a free-standing claim of actual innocence does not warrant federal habeas relief. *See Bowman v. Haas*, No. 15-1485, 2016 WL 612019, *5 (6th Cir. Feb. 10, 2016) (holding that a freestanding claim of actual innocence is not cognizable in a non-capital federal habeas proceeding); *Muntaser v. Bradshaw*, 429 F. App'x 515, 521 (6th Cir. 2011) ("[A]n actual innocence claim operates only to excuse a procedural default so that a petitioner may bring an independent constitutional challenge . . . Given that [petitioner] alleges only a free-standing claim to relief on the grounds of actual innocence, his claim is not cognizable . . . and, accordingly, does not serve as a ground for habeas relief."). Consequently, Petitioner's claim that he is actually innocent fails to state a claim upon which habeas relief can be granted.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny

a certificate of appealability when it enters a final order adverse to the applicant." A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that none of the claims in the habeas petition warrant relief. Therefore, the Court denies a certificate of appealability.

## V. Conclusion

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus and a certificate of appealability are **DENIED**.

It is further **ORDERED** that Petitioner's Motion for Evidentiary Hearing (ECF No. 12) is **DENIED**.

Dated: May 9, 2017
s/Sean F. Cox
Sean F. Cox
U. S. District Judge

I hereby certify that on May 9, 2017, the foregoing document was served on counsel of record via electronic means and upon Jerry Poyntz via First Class mail at the address below:
Jerry Poyntz 751057
CARSON CITY CORRECTIONAL FACILITY
10274 BOYER ROAD
CARSON CITY, MI 48811

s/J. McCoy
Case Manager